# 17-0874

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

GURMEET SINGH DHINSA,

*Petitioner-Appellant,*

*v.*

J.E. KRUEGER, AS WARDEN OF FCI SCHUYLKILL

*Respondent-Appellee.*

*On Appeal from the United States District Court*
*for the Eastern District of New York (Brooklyn)*

## BRIEF FOR PETITIONER-APPELLANT GURMEET SINGH DHINSA

LAW OFFICE OF MARC FERNICH
810 Seventh Avenue
Suite 620
New York, New York 10019
(212) 446-2346

*Attorneys for Petitioner-Appellant*
*Gurmeet Singh Dhinsa*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

QUESTIONS PRESENTED AND REVIEW STANDARD.......................1

STATEMENT .......................................................................................... 1

BACKGROUND ..................................................................................... 4

ARGUMENT SUMMARY ...................................................................... 6

ARGUMENT .......................................................................................... 7

I. THE CONCURRENT SENTENCE DOCTRINE IS INAPPLICABLE..7

    A.  Statement ...................................................................................... 7

    B.  The Concurrent Sentence Doctrine and the *Ray* Rule ................. 8

    C.  The Ray Rule Applies Equally on Direct and Collateral Reivew of
        Federal Convictions -- At least Where, as Here, the Defendant is
        Serving the Sentence on the Conviction He Challenges ........... 10

    D.  Section 2255's Text, Structure and Purpose All Support the *Ray*
        Rule's Application on Collateral Review ..................................... 14

    E.  Collateral Consequences Even Apart from Compulsory Financial
        Assessments, Plausibly Attend the Challenged Convictions...... 20

    F.  Conclusion ................................................................................... 22

II. DHINSA'S OBSTRUCTION OF JUSTICE MURDER CONVICTIONS
    MUST BE OVERTURNED BECAUSE *FOWLER* HAS RENDERED
    HIS CONDUCT NON-CRIMINAL................................................... 23

    A.  Legal Standard Regarding the Availability of Relief Under 28
        U.S.C. § 2241 ............................................................................. 24

    B.  *Fowler* has Altered this Circuit's Law Regarding the Federal
        Nexus Requirment for Obstruction of Justice Murders............. 25

    C.  *Fowler* Absolves Dhinsa of Federal Obstruction of Justice
        Murder........................................................................................ 28

    D.  Conclusion ................................................................................. 34

    CONCLUSION .................................................................................. 36

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abdur-Raheem v. Kelly*, 98 F. Supp. 2d 295 (EDNY 2000) *rev'd on other grounds*, 257 F.3d 122 (CA2 2001) .................................................. 10, 23

*Alaimalo v. U.S.*, 645 F.3d 1042 (CA9 2011) ......................................... 23

*Armstrong v. Guccione*, 470 F.3d 89 (CA2 2006) .................................... 1

*Ball v. U.S.*, 470 U.S. 856 (1985) ................................................. 21, 22

*Barnes v. U.S.*, No. 99-4240, 230 F.3d 1362, 2000 WL 889838, (CA8 2000) ................................................................................ 19

*Bousley v. U.S.*, 523 U.S. 614 (1998) .............................................. 25, 35

*Cheeks v. Gaetz*, 571 F.3d 680 (CA7 2009)............................................. 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................... 11

*Dhinsa v. U.S.*, 534 U.S. 897 (2001).................................................. 2, 24

*Duncan v. Walker*, 533 U.S. 167 (2001) ............................................... 16

*Fowler v. U.S.,* 563 U.S. 668 (2011) ............................................... passim

*Hawkins v. U.S.*, Nos. 12CV–00165–JHM, 06CR–00064–JHM, 2013 WL 4648314 (W.D. Ky. Aug. 29, 2013) ....................................................... 14

*Hill v. U.S.*, 368 U.S. 424 (1962) *overruled on other grounds, Stone v. Powell*, 428 U.S. 465 (1976)............................................................. 17

*In re Basciano*, 542 F.3d 950 (CA2 2008) ............................................. 21

*Jackson v. Leonardo*, 162 F.3d 81 (CA2 1998).................................... 11, 12

*Jones v. Bock*, 549 U.S. 199 (2007) ................................................... 21

*Kaufman v. U.S.*, 394 U.S. 217 (1969) ........................................ 17, 19, 20

*Leonard v. Tx.*, 137 S. Ct. 847 (2017)................................................... 9

*Nowakowski v. N.Y.*, 835 F.3d 210 (CA2 2016) ................................. 11, 20

ii

*Ray v. U.S.,* 481 U.S. 736, 737 (1987) ............................................... passim

*Rutledge v. U.S.*, 517 U.S. 292 (1996) ...................................... 9, 21, 22

*Ryan v. U.S.*, 688 F.3d 845 (CA7 2012) .......................................... passim

*Sandin v. Connor*, 515 U.S. 472 (1995)......................................21

*Schlup v. Delo*, 513 U.S. 298, 327 (1995) ................................24

*Sibron v. N.Y.*, 392 U.S. 40 (1968) ...........................................20

*Smith v. Herbert*, 275 F. Supp. 2d 361 (EDNY 2003).............................23

*Spencer v. Kemna*, 523 U.S. 1 (1998) ......................................11

*Steffes v. Pollard*, 663 F.3d 276 (CA7 2011) ...........................12

*Stone v. Powell,* 428 U.S. 465 (1976).........................................19

*Tavarez v. Larkin*, 814 F.3d 644 (CA2) *cert. denied*, 137 S. Ct. 106
(2016) ........................................................................ 11, 12

*Timmons v. Lee*, No. 10–CV–1155 (JG), 2010 WL 3813963, at *10 n.8
(EDNY Sept. 23, 2010) ..........................................................14

*Triestman v. U.S.*, 124 F.3d 361 (CA2 1997) ....................................17, 24

*U.S. v. Agramonte*, 276 F.3d 594 (CADC 2001)......................................8

*U.S. v. Bass*, 310 F.3d 321 (CA5 2002) ..................................13

*U.S. v. Coonan*, 938 F.2d 1553 (CA2 1991)...........................21

*U.S. v. Davis*, 689 F.3d 179 (CA2 2012)...........................11, 12

*U.S. v. Dhinsa*, 243 F.3d 635 (CA2 2001) .................................. 2, 4, 5, 33

*U.S. v. Diaz*, 176 F.3d 52 (CA2 1999) ....................................27

*U.S. v. Felipe*, 148 F.3d 101 (CA2 1998) ................................21

*U.S. v. Fitzen*, No. 97-35222, 134 F.3d 380, 1998 WL 22174 (CA9 Jan.
16, 1998)......................................................................13

*U.S. v. Freeman*, 818 F.3d 175 (CA5 2016)...................................9, 12, 18

iii

*U.S. v. Gordils*, 117 F.3d 99 (CA2 1997) ...............................................17

*U.S. v. Harris*, 695 F.3d 1125, 1139 (CA10 2012) ...................................8

*U.S. v. Hayman*, 342 U.S. 205 (1952) ....................................................19

*U.S. v. Jones*, 403 F.3d 604 (CA8 2005) .................................................13

*U.S. v. Juvenile Male*, 560 U.S. 558 (2010) ............................................11

*U.S. v. Lopez*, 372 F.3d 86 (CA2 2004) .......................................26, 28, 30

*U.S. v. Outen*, 286 F.3d 622 (CA2 2002) .................................................17

*U.S. v. Pardo*, 25 F.3d 1187 (CA3 1994) .................................................11

*U.S. v. Ramos-Cruz*, 667 F.3d 487 (CA4 2012) ......................................31

*U.S. v. Robinson*, No. 96-7060, 149 F.3d 1172, 1998 WL 252739, at *1
    (CA4 May 14, 1998) .............................................................................13

*U.S. v. Romero*, 54 F.3d 56 (CA2 1995) ...........................................26, 27

*U.S. v. Ross*, 801 F.3d 374 (CA3 2015) .......................................14, 15, 19

*U.S. v. Sedoma*, Cr. No. 99–10332–MLW, 2015 WL 1132943 (D. Mass.
    March 11, 2015) ...................................................................................14

*U.S. v. Snyder*, Dkt. No. 16-3779 (CA7 2017) ......................28, 31, 33, 34

*U.S. v. Tolliver*, 116 F.3d 120 (CA5 1997) ..............................................20

*U.S. v. Triestman*, 178 F.3d 624 (CA2 1999) .........................................17

*U.S. v. Tyler*, 732 F.3d 241 (CA3 2013)..............................................24, 35

*U.S. v. Vargas*, 615 F.2d 952 (CA2 1980) ....................................7, 21, 22

*U.S. v. Veliz*, 800 F.3d 63 (CA2 2015) ............................................. passim

*U.S. v. Wilkerson*, 361 F.3d 717 (CA2 2004)..........................................27

*Urinyi v. U.S.*, 607 F.3d 318 (CA2 2010) .................................................16

*Wall v. U.S.*, 619 F.3d 152 (CA2 2010) ...................................................16

*Waterford v. McQuiggin*, No. 11–CV–10664, 2011 WL 6960962 (E.D. Mich. Dec. 4, 2011), *R&R adopted*, 2012 WL 32734 (E.D. Mich. Jan. 6. 2012)............................................................................................ 21, 23

*Wells v. U.S.*, No. Civ. 95–0496–R, 1995 WL 714456 (S.D. Cal. Oct. 12, 1995)...................................................................................................... 18

*Willits v. U.S.*, 182 F. Supp. 3d 1278 (M.D. Fla. 2016) .......................... 21

*Wood v. Milyard*, 566 U.S. 463, 132 S. Ct. 1826 (2012)........................... 7

*Yates v. U.S.*, 135 S. Ct. 1074, 1083 (2015)........................................... 16

*Yick Man Mui*, 614 F.3d 50 (CA2 2010).................................................. 1

Statutes

18 U.S.C. § 1512 ........................................................................ passim

18 U.S.C. § 3013 .............................................................. 6, 9, 10, 12

28 U.S.C. § 2241 ........................................................................ passim

28 U.S.C. § 2255 ........................................................................ passim

42 U.S.C. § 1983 .......................................................................... 21

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and 28 U.S.C. § 1915A ............................................................................................ 21

Rules

Fed. R. Evid. 609 ...................................................................... 20

## QUESTIONS PRESENTED AND REVIEW STANDARD

1.      Did the district court err in holding a federal habeas corpus motion, 28 U.S.C. §§ 2241, 2255, barred by the concurrent sentence doctrine where each conviction challenged carried a separate mandatory financial assessment?

2.      Did the court err in denying habeas relief as to two obstruction of justice murder convictions on grounds that:

(a) *Fowler v. U.S.,* 563 U.S. 668 (2011), didn't change this Court's interpretation of 18 U.S.C. § 1512's jurisdictional element, so the movant's actual innocence claim was procedurally defaulted; and

(b) even if *Fowler* did change the law, the movant was guilty anyway?

Habeas corpus denials under §§ 2241 and 2255 are reviewed de novo. *Armstrong v. Guccione*, 470 F.3d 89, 96 (CA2 2006); *Yick Man Mui*, 614 F.3d 50, 53 (CA2 2010).

## STATEMENT

Gurmeet Singh Dhinsa appeals a district court order (Korman, Sr. D.J., E.D.N.Y.) denying his motion for habeas corpus under 28 U.S.C. §§ 2241 and 2255. A174.

A jury convicted Dhinsa in 1999, after a four-month trial, of crimes stemming from "his role as leader of the Singh Enterprise, a racketeering organization centered around a chain of gas[] stations [he] owned." *U.S. v. Dhinsa*, 243 F.3d 635, 642 (CA2 2001). "The enterprise was funded by a pump-rigging scheme that overcharged" customers for more than a decade. *Id.* at 643.

Among the convictions were two for obstruction of justice murder, Counts Five and Nine, violating 18 U.S.C. § 1512. Those convictions weren't challenged on Dhinsa's direct appeal. The Supreme Court denied review. *See Dhinsa v. U.S.*, 534 U.S. 897 (2001).

In May 2012 Dhinsa filed a 28 U.S.C. § 2241 habeas petition in the Middle District of Pennsylvania. A7-A15. Relying on the intervening *Fowler* decision, the petition claimed Dhinsa was actually innocent of obstruction of justice murder because the trial evidence didn't show a "reasonable likelihood" that either decedent would have made a relevant communication to federal law enforcement. *See* A10.

Dhinsa's petition was transferred to the Eastern District of New York, and then to this Court per 28 U.S.C. § 2255(h) for certification as

successive.[1] A3. This Court remanded the petition in May 2013, directing Judge Korman to determine (1) "whether Dhinsa satisfies the criteria set forth in 28 U.S.C. § 2255(e) and may therefore bring his petition under 28 U.S.C. § 2241"; and, if so, (2) "whether the petition should be granted." A4, A16-A17.

In Feb. 2015 the district court ordered the parties to "advise" it "of the practical sentencing consequences if [Dhinsa] prevails on his argument that the two obstruction of justice murder counts be vacated." A4. Another order followed a couple months later, this one instructing the parties to "address … the application of the concurrent sentence doctrine" as they were "in agreement that a ruling setting aside counts 5 and 9 … would not in any way affect the life sentence that was imposed." A5. Oral argument, largely addressing the concurrent sentence doctrine, was held in July 2015. *See* A123-A147.

In March 2017, the district court handed down an opinion denying habeas relief and "answer[ing] both … questions in the Second Circuit's mandate in the negative." A174. It granted a certificate of appealability and Dhinsa filed a timely notice of appeal. A6, A127, A176. He is serving

---

[1] Dhinsa had filed several earlier habeas petitions on other grounds. *See* A151-A152.

3

six concurrent life sentences, two for the obstruction convictions in issue. A149.

## **BACKGROUND**

Dhinsa allegedly "targeted" the two decedents, former Citygas employees Manmohan and Satinderjit Singh, "because their active or potential cooperation with the police posed a threat to the continued operation of the Singh Enterprise." A46.

According to the trial evidence, Manmohan's brother Kulwant, another Citygas employee, disappeared in July 1995. *Dhinsa*, 243 F.3d at 643-44. Soon afterward Manmohan found work at a Citygas station and started inquiring into Kulwant's disappearance. *Id.*

In March 1997 Manmohan confronted Dhinsa and others about their roles in Kulwant's disappearance. *Id.* As a result, Dhinsa told an associate to kill Manmohan "'because the police were close to finding him' as a potential cooperator." A47. Manmohan was killed March 16, 1997. *Dhinsa*, 243 F.3d at 661.

Law enforcement officers interviewed several of Manmohan's friends, including Satinderjit, at his funeral. A48. Satinderjit then began cooperating with the NYPD, providing information about Kulwant's

disappearance, Manmohan's murder and the Citygas pump-rigging scheme. *Dhinsa*, 243 F.3d at 644. Satindjerjit also tried to contact Dhinsa's brother Gogi, who was wanted for an unrelated 1991 homicide. *Id.*

In May 1997 Satinderjit informed police that Gogi could be found at the Citygas corporate offices, accompanying officers there to identify him and facilitate his arrest. *Id.* Gogi, Dhinsa and two associates were arrested on weapons charges for guns found inside the building. *Id.*

In the aftermath, Dhinsa "ordered that Satinderjit, who he believed was a cooperating witness against Gogi [with respect to the 1991 homicide] be killed." *Id.* at 644-45. And he was – on June 18, 1997. *Id.* at 661.

In July 1997, federal authorities began to investigate the Singh Enterprise in relation to the seized firearms. *See* A71-72.

Dhinsa protested at trial that there was no evidence to support an inference of a likely *federal* communication as § 1512 required. *See* A29. The district court maintained, however, that a potential "communication with a law enforcement officer, period" sufficed. A30. The jury was instructed accordingly, over objection. *Id.*; *see also* A67, A169.

## **ARGUMENT SUMMARY**

1.     Dhinsa attacks collaterally a pair of federal convictions carrying life sentences that run concurrent to, among others, four additional life counts. Under *Ray v. U.S.*, equally applicable on direct and collateral review, the motion presents a live, justiciable controversy because each conviction carries a separate $100 assessment imposed mandatorily under 18 U.S.C. § 3013. 481 U.S. 736, 737 (1987).

2.     The Supreme Court's holding in *Fowler* altered Second Circuit precedent regarding obstruction of justice murders, requiring proof of a reasonably likely communication from the deceased to a federal law enforcement officer. Because *Fowler* abrogated the prevailing standard when Dhinsa's conviction became final, he is entitled to claim actual innocence under 28 U.S.C. § 2241. And because the record supports that claim, the challenged convictions fail.

# ARGUMENT

## POINT I

### THE CONCURRENT SENTENCE DOCTRINE IS INAPPLICABLE

### A.   STATEMENT

Straining longstanding precedent to create a test case – much as it did in the underlying prosecution – the district court suggested on its own initiative that the concurrent sentence doctrine moots Dhinsa's motion.[2] *Compare* A164 (recognizing a "line of cases" in which this Court "has either declined to apply the concurrent-sentence doctrine or reaffirmed its unwillingness to do so," but "question[ing]" whether it would follow suit in the "circumstances" here) *with U.S. v. Dhinsa*, 171 F.3d 721, 722, 726 (CA2 1998) (disapproving district court's tactic of issuing a suppression "ruling inconsistent with its findings for the sole purpose of creating a right of appellate review that would not otherwise exist"). We disagree.

---

[2] The district court identified no exceptional circumstances excusing the government's forfeiture of this discretionary, non-jurisdictional defense, *U.S. v. Vargas*, 615 F.2d 952, 958-59 (CA2 1980) – reason enough to reject it on appeal. *E.g.*, *Wood v. Milyard*, 566 U.S. 463, 132 S. Ct. 1826, 1832-34 (2012); *Ryan v. U.S.*, 688 F.3d 845, 847-48 (CA7 2012).

**B.  THE CONCURRENT SENTENCE DOCTRINE AND THE *RAY*
RULE**

Under the concurrent sentence doctrine, "an appellate court
reviewing a conviction need not hear the challenge if another valid
conviction carries a sentence equal to or greater than the challenged
conviction." A155; *see, e.g., Ryan*, 688 F.3d at 849 (doctrine allows
reviewing courts to "pretermit decision about convictions producing
concurrent sentences[] when the extra convictions [lack] cumulative
effects").

But *Ray v. U.S.* – consigned to a passing parenthetical citation in
the 27-page opinion below – effectively abolished the "doctrine" in the
"federal courts." 481 U.S. 736, 737 (1987); *see, e.g., U.S. v. Harris*, 695
F.3d 1125 (CA10 2012) (*Ray* "effectively abolished the concurrent-
sentence doctrine in cases where a defendant challenges one or more of
multiple federal convictions, because every such conviction carries its
own special assessment"); *U.S. v. Agramonte*, 276 F.3d 594, 598 (CADC
2001) (*Ra*y "spelled the death knell for the concurrent sentence doctrine
as applied to review of convictions").

More specifically, the Supreme Court in *Ray* made it crystal clear
that a federal defendant who incurs mandatory special "monetary"

8

assessments on each of several counts of conviction "is not in fact serving concurrent sentences." *Id.* (citing 18 U.S.C. § 3013); *accord Rutledge v. U.S.*, 517 U.S. 292, 301-02 (1996) ("As long as § 3013 stands, a second conviction will amount to a second punishment.").

There is no dispute that Dhinsa, like any individual federal felon, did indeed receive a separate $100 assessment for each of the two obstruction of justice convictions he suffered. A32; *see* 18 U.S.C. § 3013(a)(2)(A). Given *Ray*'s straightforward holding, those automatic consequences[3] of the contested convictions begin and end the matter[4] – unless this case's collateral rather than direct review posture somehow

---

[3] *Cf. Rutledge*, 517 U.S. at 302-03 (where, as here, 18 U.S.C. § 3013 "required" imposition of special assessment, it was "as much" a "consequence" of conviction as those previously "recognized").

[4] Admittedly, it may seem a "legal fiction" that a nominal monetary assessment renders non-concurrent otherwise identical sentences running simultaneously. A32 (citation and internal quotes omitted). But that truism in no way undermines *Ray*'s pellucid holding. *Cf. Leonard v. Tx.*, 137 S. Ct. 847, 849 (2017) (Thomas, J., statement dissenting from certiorari denial) (characterizing plainly lawful proceedings "*in rem*" – wherein the "thing itself, rather than the owner," is deemed "guilty of the crime" – as a "fiction"). And as *Ray* instructs, the *fact* of extra exactions entitles Dhinsa to challenge the convictions that produced them – whether or not he "actually" wants a "refund." A32; *cf. U.S. v. Freeman*, 818 F.3d 175, 179 n.1 (CA5 2016) ("Freeman is not directly challenging the $100 special assessment. Such challenge would be outside the scope of § 2255. He merely uses the fine as evidence of prejudice because he would not have been assessed the fine if he had not been convicted on count three.") (citation omitted); *Rutledge*, 517 U.S. at 302 ("second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence" – even where "petitioner did not challenge the assessment below").

9

calls for a different result. *See Ryan*, 688 F.3d at 849 ("As a practical matter, the concurrent-sentence doctrine was abrogated for direct appeal when Congress imposed a special assessment of $50 (now $100) for each separate felony conviction.") (citing *Ray* and 18 U.S.C. § 3013(a)(2)).

## C. THE RAY RULE APPLIES EQUALLY ON DIRECT AND COLLATERAL REVIEW OF FEDERAL CONVICTIONS – AT LEAST WHERE, AS HERE, THE DEFENDANT IS SERVING THE SENTENCE ON THE CONVICTION HE CHALLENGES

### 1. The Opinion Below

Yet the district court pointed to little in the text, structure or legislative history of 28 U.S.C. §§ 2241 or 2255 to suggest it does. *But see Abdur-Raheem v. Kelly*, 98 F. Supp. 2d 295, 320 (EDNY 2000) (Korman, J.) (describing "habeas corpus application" as "simply another stage in the same case," and noting that "*appellate analogy to federal habeas corpus*" enjoys "*increased acceptance*") (emphasis supplied) (citations and internal quotes omitted), *rev'd on other grounds*, 257 F.3d 122 (CA2 2001).

Nor did the court cite a single case so holding or remotely implying. To the contrary, none of the ostensibly relevant cases the court could muster even involved a federal criminal conviction on collateral review.

10

Much less did any of them purport to *withhold* collateral review of a federal conviction on concurrent sentence grounds.

Rather, all the cases marshaled for the court's novel excavation of the doctrine arose in materially different settings where the *Ray* rule didn't apply. *E.g.*, *Spencer v. Kemna*, 523 U.S. 1 (1998) (federal habeas challenge to state parole revocation); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (civil declaratory judgment action attacking part of Foreign Intelligence Surveillance Act as unconstitutional); *U.S. v. Juvenile Male*, 560 U.S. 558 (2010) (challenge to release condition following revocation of juvenile supervision); *U.S. v. Pardo*, 25 F.3d 1187, 1194 & n.6 (CA3 1994) (direct appeal of federal sentence, not conviction); *Tavarez v. Larkin*, 814 F.3d 644 (CA2) (federal habeas petition challenging state conviction), *cert. denied*, 137 S. Ct. 106 (2016); *Nowakowski v. N.Y.*, 835 F.3d 210 (CA2 2016) (same); *Jackson v. Leonardo*, 162 F.3d 81 (CA2 1998) (same); *cf. U.S. v. Davis*, 689 F.3d 179 (CA2 2012) (direct appeal of federal conviction).

And even in those distinct contexts, the district court had to admit (A35), it appears that this Court has never actually applied the doctrine post-*Ray* to refuse to hear an appeal on concurrency grounds – either on

11

direct *or* collateral review. *E.g.*, *Tavarez*, 814 F.3d at 648 ("we decline the district attorney's invitation to dispose of this case by invoking the concurrent sentence doctrine"); *Davis*, 689 F.3d at 184 ("the fact of concurrent sentences on two counts does not moot a challenge to one count"); *Jackson*, 162 F.3d at 86-87.

## 2. Precedent Overwhelmingly Applies the *Ray* Rule on Both Direct and Collateral Review

If anything, the weight of authority – conspicuously overlooked by the district court – cuts the other way, applying the *Ray* rule equally on direct and collateral review alike. *See*, *e.g.*, *Freeman*, 818 F.3d at 178-79 & n.1 ("$100 special assessment" established "prejudice" vacating concurrent conviction under § 2255 for ineffective counsel); *Steffes v. Pollard*, 663 F.3d 276, 280-81 (CA7 2011) (state habeas petitioner under 28 U.S.C. § 2254 "not serving concurrent sentences" where he "received a $95 assessment" for challenged conviction, "preclud[ing] application of the concurrent sentence doctrine"); *Cheeks v. Gaetz*, 571 F.3d 680, 689 (CA7 2009) ("The concurrent sentence doctrine would not apply if Cheeks," a state prisoner seeking federal habeas relief under § 2254, "had been convicted in federal court. For federal convictions, 18 U.S.C. § 3013 mandates a separate monetary assessment for each count of conviction,

and these separate assessments preclude the use of the concurrent sentence doctrine. Cheeks, though, was convicted in Illinois state court, and the state court did *not* impose a monetary assessment or fine for any of his convictions in this case.") (emphasis supplied) (citations omitted); *U.S. v. Jones*, 403 F.3d 604, 607 (CA8 2005) ("$100 statutory special assessment" constitutes "actual prejudice" vacating for ineffective counsel under § 2255 concurrent conviction that didn't "length[en]" sentence); *U.S. v. Bass*, 310 F.3d 321, 330 (CA5 2002) ("additional $50" assessment for contested conviction defeats application of concurrent sentence doctrine even though vacatur won't "short[en]" defendant's "total time of incarceration"); *U.S. v. Robinson*, No. 96-7060, 149 F.3d 1172, 1998 WL 252739 (CA4 May 14, 1998) ("[b]ecause Robinson received a special assessment of $50 on each conviction, resolution of this [§ 2255] case on the basis of the concurrent sentence doctrine was error"; doctrine "inapplicable" where "defendant received, in addition to concurrent terms of imprisonment, cumulative monetary assessments pursuant to 18 U.S.C.[] § 3013"); *U.S. v. Fitzen*, No. 97-35222, 134 F.3d 380, 1998 WL 22174, at *1 (CA9 Jan. 16, 1998) (extending to collateral review in § 2255

13

case Ninth Circuit's outright rejection of concurrent sentence doctrine on

direct appeal).[5]

## D. SECTION 2255'S TEXT, STRUCTURE AND PURPOSE ALL SUPPORT THE *RAY* RULE'S APPLICATION ON COLLATERAL REVIEW

This wave of precedent firmly establishes the following proposition:

Section 2255 motions challenging otherwise interlocking convictions

---

[5] *See also*, *e.g.*, *U.S. v. Sedoma*, Cr. No. 99–10332–MLW, 2015 WL 1132943, at *6 (D. Mass. March 11, 2015) (Wolf, J.) ("In sentencing Sedoma, this court imposed a mandatory $100 special assessment for each count of conviction. Even though Sedoma was sentenced to concurrent prison sentences, each conviction involves an independent $100 adverse consequence. The court must, therefore, review each count of conviction that could have been affected by the motion to suppress, even if vacating the conviction on that count [under 28 U.S.C. § 2255] would not affect Sedoma's overall prison sentence."); *Hawkins v. U.S.*, Nos. 12CV–00165–JHM, 06CR–00064–JHM, 2013 WL 4648314, at *3 (W.D. Ky. Aug. 29, 2013) ("nothing more than the imposition of an additional special assessment" demonstrates § 2255 "prejudice" eluding concurrent sentence doctrine) (citations and internal quotes omitted); *Timmons v. Lee*, No. 10–CV–1155 (JG), 2010 WL 3813963, (EDNY Sept. 23, 2010) (Gleeson, J.) ("imposition of a $5,000 fine on each of … three murder counts precludes … application of [concurrent sentence] doctrine" in state prisoner's 28 U.S.C. § 2254 habeas corpus action).

We recognize contrary authority in *U.S. v. Ross*, 801 F.3d 374, 376-77, 381-82 (CA3 2015) (limiting *Ray* rule to direct appeal on § 2255 motion challenging 10-year count wholly subsumed by five other, unchallenged 10-year counts and consecutive 30-year count, also unchallenged) and *Ryan*, 688 F.3d at 848-49 ("Ryan's [§ 2255] challenge to *expired* [60-month fraud] sentences may or may not be moot as a technical matter" where he was serving valid 78-month RICO sentence) (emphasis supplied). These opinions are unpersuasive because, as we explain shortly, § 2255 motions attack the validity of *convictions and sentences* rather than simply seeking release from custody, as *Ross* and *Ryan* mistakenly presume. At any rate, those cases are distinguishable even on their own terms. In contrast to the subsumed and expired sentences challenged in *Ross* and *Ryan*, Dhinsa is unquestionably in custody under the dual life sentences he assails. *Id.*

14

carrying their own mandatory financial assessments present a live, justiciable controversy – at least when brought by a federal inmate, like Dhinsa, actually serving the sentence for the conviction under attack. And that lopsided consensus both comports with § 2255's plain meaning and vindicates its legislative purpose.

After all, Dhinsa – a federal "prisoner" incarcerated for life – is assuredly "in custody under sentence" of an Article III "court." 28 U.S.C. § 2255(a). And by the motion at hand, he "claim[s] the right to be released" from the "*sentence*" on the "ground" that it was "imposed in violation of the Constitution [and] laws of the United States" and is "otherwise subject to collateral attack" – all because he's not guilty of obstruction of justice murder under 18 U.S.C. § 1512(a)(1)(C) as the Supreme Court construed it in *Fowler*. *Id.* (emphasis supplied).

Contrary to the key assumptions anchoring *Dhinsa*,[6] *Ross*[7] and *Ryan*,[8] nothing in the statutory text requires that the movant seek release from "*custody*" (or "confinement" or "detention") as opposed to "*sentence*." If it did, then the final clauses of §§ 2255(a) and (b) –

---

[6] *See* A153-A154, A160-A161.

[7] *See* 801 F.3d at 377, 379-80, 382.

[8] *See* 688 F.3d at 848-49.

15

authorizing the court to "vacate, set aside or *correct* the sentence" and to "discharge the prisoner *or resentence him* or grant a new trial *or correct the sentence* as … appropriate" – would amount to senseless surplusage. *Contra, e.g., Duncan v. Walker*, 533 U.S. 167, 174 (2001) (duty to "give effect, if possible, to every clause and word of a statute" counsels against "treat[ing] statutory terms as surplusage") (citations and internal quotes omitted).

In fact, § 2255's pregnant title[9] – "Federal custody; remedies on motion *attacking sentence*"– graphically confirms its "explicit purpose": namely, affording the petitioner an "opportunity" to "collateral[ly] attack" the "*conviction and sentence*" leading to his confinement, rather than the other way around. *Wall v. U.S.*, 619 F.3d 152, 155 (CA2 2010) (quoting *Urinyi v. U.S.*, 607 F.3d 318, 321 (CA2 2010)) (emphasis supplied) (additional citation, internal quotation marks and brackets omitted). The validity of the conviction and sentence, that is to say, necessarily determines the "legality" of the "detention" flowing from

---

[9] *See Yates v. U.S.*, 135 S. Ct. 1074, 1083 (2015) (statute's "title" is a "tool[] available for the resolution of a doubt about [its] meaning") (citation and internal quotation marks omitted).

them, 28 U.S.C. § 2255(e)[10] – not vice versa. That's one reason § 2255(e) expressly contemplates "resentenc[ing]" where, for example, a prisoner successfully challenges fewer than all of multiple convictions or "sentences" that were "'part of an interdependent sentencing package.'" *U.S. v. Outen*, 286 F.3d 622, 640 (CA2 2002) [quoting *U.S. v. Triestman*, 178 F.3d 624, 631 (CA2 1999) and citing *U.S. v. Gordils*, 117 F.3d 99, 101-04 (CA2 1997) (statute empowers district court to reopen entire sentencing package)]. Indeed, the government conceded as much below, acknowledging that § 2255 would "require[]" some form of "resentencing" – though not necessarily a "full" one – if Dhinsa "successfully challenged" some but not all of the "related" life sentences he's "serving." A84 (citing *Gordils*).

---

[10] "Section 2255 revised the procedures by which federal prisoners are to seek [habeas] relief but … in [no] respect cut back the scope of the writ." The "legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." *Kaufman v. U.S.*, 394 U.S. 217, 221-22 (1969) (quoting *Hill v. U.S.*, 368 U.S. 424, 427 (1962)), *overruled on other grounds*, *Stone v. Powell,* 428 U.S. 465 (1976). Since § 2255 is coextensive with common law habeas, shutting off § 2241's "'escape hatch'" for conduct innocent under the statute of conviction – as urged in the opinion below – would raise the same constitutional concerns animating *Triestman v. U.S. Compare* A153-A154 *with* 124 F.3d 361 (CA2 1997).

In insisting otherwise – that § 2255 addresses custody or detention to the exclusion of conviction and sentence – the district court's opinion turns the statutory focus upside down, mistaking effect for cause. Whereas § 2255 speaks to unlawful convictions and sentences and makes custody a jurisdictional predicate for assailing them, the court's opinion puts the shoe squarely on the other foot.

Similarly, in insinuating that an inmate invoking the *Ray* rule seeks to "collateral[ly] attack" a "*special assessment*[]," 688 F.3d at 849 (emphasis supplied), *Ryan* confuses the means or vehicle for contesting one of several overlapping sentences with the sentence being contested. Like the defendant in *Freeman*, Dhinsa "is *not* directly challenging the [extra] $100 special assessment[s]" he received. "He merely uses th[os]e" exactions "as evidence of prejudice because [t]he[y] would not have been assessed … if he had not been convicted on count[s]" five and nine. 818 F.3d at n.1 (citation omitted); *see Wells v. U.S.*, No. Civ. 95–0496–R, 1995 WL 714456, at *4 (S.D. Cal. Oct. 12, 1995) ("defendant's 'liability to pay the total [assessment amount] depends on the validity of each of his ... convictions'") (quoting *Ray*, 481 U.S. at 737) (alterations omitted).

18

Nor does anyone suggest, as *Ross* would have it, that the "burden of a special assessment" *itself* "amount[s] to custody." 801 F.3d at 382. Rather, Dhinsa's custody springs from his convictions under § 1512 (among other life counts), and their validity is properly disputed via § 2255.

By the preceding fallacies, all three opinions – *Dhinsa*, *Ryan* and *Ross* – impermissibly "impinge upon prisoners' rights of collateral attack upon their convictions." *Kaufman*, 394 U.S. at 221-22 (quoting *U.S. v. Hayman*, 342 U.S. 205, 219 (1952)) (footnote omitted). They thus flout § 2255's "sole purpose" by *maximizing* – instead of "minimiz[ing]" – the welter of procedural "difficulties encountered in habeas corpus hearings" concerning federal convictions. *Id.*; *contra Stone*, 428 U.S. at 478 n.11 (habeas is an "equitable" remedy, to be flexibly applied as "law and justice require") (citations and internal quotes omitted). It follows that their crabbed reading of the *Ray* rule and concomitant invocation of the concurrent sentence doctrine are in error and must be rejected.[11]

---

[11] Even assuming the concurrent sentence doctrine survives *Ray* on collateral review of federal convictions carrying mandatory special assessments, the appropriate course upon invoking the doctrine is to vacate the unreviewed convictions and remit the accompanying assessments. *E.g.*, *Barnes v. U.S.*, No. 99-4240, 230 F.3d 1362, 2000 WL 889838, at *1 (CA8 2000); *U.S. v. Tolliver*, 116 F.3d 120, 126 & n.7 (CA5

### E. COLLATERAL CONSEQUENCES, EVEN APART FROM COMPULSORY FINANCIAL ASSESSMENTS, PLAUSIBLY ATTEND THE CHALLENGED CONVICTIONS

As the district court grudgingly agreed (A162-A164), the Supreme Court and this one presume that criminal convictions carry collateral consequences that present a live case or controversy conferring Art. III standing. Though the presumption isn't "conclusive," the government bears a heavy "rebutt[al]" burden. *Id.* 16. It must "prove by sufficient evidence that there is '*no possibility*' such consequences" – however "hypothetical and speculative" – will "attach." *Nowakowski*, 835 F.3d at 225 (emphasis supplied) (quoting *Sibron v. N.Y.*, 392 U.S. 40, 57 (1968)).

If the separate assessments attending Counts Five and Nine weren't enough to slip the concurrent sentence doctrine (and they are), then these collateral consequences – widely recognized in other cases – amply suffice to defeat a mootness finding:

- The two obstruction of justice murder convictions could be used to "impeach" Dhinsa's "credibility" (*see* Fed. R. Evid. 609) if he were prosecuted for future prison crimes[12] or brought a civil suit, 42

---

1997). Were this Court to affirm on concurrency grounds, then, it should either strike Dhinsa's count five and nine convictions and order a $200 refund or remand the case for the district court to do so.

[12] To the extent the district court's opinion implies otherwise, collateral consequences in no way arise "only" – or even primarily – in "prosecut[ions] for a separate crime

20

U.S.C. § 1983, based on prison rights abuses or deprivations of procedural due process – not uncommon events.[13] *Rutledge*, 517 U.S. at 302 (quoting *Ball v. U.S.*, 470 U.S. 856, 864-65 (1985)) (internal citations omitted); *accord U.S. v. Vargas*, 615 F.2d 952, 960 (CA2 1980).

- The convictions could likewise enhance any sentence imposed for future prison crimes. *E.g.*, *Rutledge*, 517 U.S. at 302; *Ball*, 470 U.S. at 865; *Vargas*, 615 F.3d at 959-60.

- The convictions could "negatively affect[]" Dhinsa's security classification, institutional placement and eligibility for "special programs within the Bureau of Prisons." *Cf. Willits v. U.S.*, 182 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016).

- They could dampen Dhinsa's chances to obtain clemency, commutation or a pardon. *E.g.*, *Vargas*, 615 F.2d at 960; *Waterford v. McQuiggin*, No. 11–CV–10664, 2011 WL 6960962, at *3 (E.D. Mich. Dec. 4, 2011), *R&R adopted*, 2012 WL 32734 (E.D. Mich. Jan. 6. 2012).

---

committed *after* [the petitioner] is released from custody." A154 (emphasis supplied) (citation omitted).

[13] *See, e.g., In re Basciano*, 542 F.3d 950, 952-53 (CA2 2008) (defendant allegedly "direct[ed] the affairs of the Bonanno crime family from prison, including ordering acts of violence" and plotting murders) (citation omitted); *U.S. v. Felipe*, 148 F.3d 101, 105 (CA2 1998) ("[a]t all times, Felipe participated in the Latin Kings' activities from his jail cell"); *U.S. v. Coonan*, 938 F.2d 1553, 1560 (CA2 1991) ("even while in jail Coonan continued to act as leader of the Westies and the Westies' criminal activities continued without significant disruption"); *Jones v. Bock*, 549 U.S. 199, 203 (2007) ("In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations.") (footnote omitted); *Sandin v. Connor*, 515 U.S. 472, 476 (1995) (complaint alleged "deprivation of procedural due process in connection with [prison] disciplinary hearing"); 42 U.S.C. § 1997e(a) and 28 U.S.C. § 1915A (Prison Litigation Reform Act).

- Though Dhinsa is serving "separate sentence[s] of life imprisonment without possibility of parole," it "remains possible" – "however unlikely" – that the underlying "convictions could be overturned in … subsequent … postconviction proceedings." Affirming the district court would thus "have the effect" of "forever precluding" Dhinsa from "challenging" the Count Five and Nine "conviction[s]," even if the separate life sentences are "commuted or otherwise become[] invalid," due to the rigors of the "AEDPA" – itself a cognizable collateral consequence. *Id.*

- At a minimum, the "societal stigma accompanying any criminal conviction" advises against a mootness finding. *Rutledge*, 517 U.S. at 302 (quoting *Ball*, 470 U.S. at 865) (internal citations omitted); *accord Vargas*, 615 F.3d at 960.

Leaving aside the mandatory financial assessments, these wholly plausible collateral consequences independently make Dhinsa's motion ripe and justiciable.

## F.   **CONCLUSION**

The presence of separate special assessments prohibits application of the concurrent sentence doctrine on both direct and collateral review of federal criminal convictions – at least where, as here, the inmate is serving the sentence for the conviction he challenges. Accordingly, the district court erred insofar as it invoked the doctrine to dismiss Dhinsa's

22

federal habeas petition, filed under 28 U.S.C. §§ 2241 and 2255, as moot.

To that extent, the judgment below must be reversed.[14]

## POINT II
## DHINSA'S OBSTRUCTION OF JUSTICE MURDER CONVICTIONS MUST BE OVERTURNED BECAUSE *FOWLER* HAS RENDERED HIS CONDUCT NON-CRIMINAL

Dhinsa's count five and nine convictions for obstruction of justice murder, 18 U.S.C. § 1512(a)(1), must be overturned. The record fails to establish that it is "*reasonably likely*"[15] either decedent would have communicated with a federal law enforcement officer, as the supervening *Fowler* decision – which abrogated the controlling standard[16] when

---

[14] Research indicates that resurrecting the moribund concurrent sentence doctrine is something of a project for the learned district judge. *See, e.g., Alaimalo v. U.S.*, 645 F.3d 1042, 1050-1066 (CA9 2011) (dissenting op. of Korman, Sr. D.J., sitting by designation); *Abdur-Raheem*, 98 F. Supp. 2d at 320-21, *rev'd on other grounds*, 257 F.3d 122; *cf.* A159 ("While I need not go so far in order to decide the concurrent-sentence aspect of this case, in my view virtually none of the far-fetched hypothetical collateral consequences that have been cited in earlier cases are sufficient to satisfy the standard set out in *Clapper*, and these cases are no longer good law."). Nevertheless, his revivalist impulse remains "disfavored," *Smith v. Herbert*, 275 F. Supp. 2d 361, 367 (EDNY 2003), as courts still "hesita[te] to apply th[e] doctrine." *Waterford*, 2011 WL 6960962, at *2 (citations and internal quotes omitted). By the judge's own lights, it continues to be the subject of "uncertain sympathy." *Abdur-Raheem*, 98 F. Supp. 2d at 320.

[15] 563 U.S. at 678 (emphasis supplied).

[16] *See U.S. v. Veliz*, 800 F.3d 63, 74 (CA2 2015).

23

Dhinsa's convictions became final[17] – requires. Accordingly, Dhinsa is "actually innocent"[18] of obstruction of justice murder, making his conviction on those two life counts a "manifest injustice."[19] A habeas writ vacating the convictions should issue under 28 U.S.C. § 2241. *See U.S. v. Tyler*, 732 F.3d 241, 253 (CA3 2013).

## A. LEGAL STANDARD REGARDING THE AVAILABILITY OF RELIEF UNDER 28 U.S.C. § 2241

A defendant may seek habeas relief under 28 U.S.C. § 2241 – claiming he is innocent of the crime(s) of conviction – when § 2255 "is inadequate or ineffective to test the legality of his detention"[20] and he lacked an earlier opportunity to effectively raise his claim. *See Triestman*, 124 F.3d at 380; A165-A166.

To win on the merits, the defendant must establish by preponderant evidence that no reasonable juror would have convicted him under the prevailing legal standard. *Bousley v. U.S.*, 523 U.S. 614,

---

[17] Dhinsa's conviction for the two obstruction of justice murders at issue here became final upon the Supreme Court's denial of certiorari on Oct. 1, 2001. *See Dhinsa v. U.S.*, 534 U.S. 897 (CA2 2001).

[18] *Triestman v. U.S.*, 124 F.3d 361, 379 (CA2 1997).

[19] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

[20] 28 U.S.C. § 2255(e).

623 (1998). He can meet this burden by pointing to an intervening change in law that renders his conduct non-criminal. *Id.* at 620-21.

## B. *FOWLER* HAS ALTERED THIS CIRCUIT'S LAW REGARDING THE FEDERAL NEXUS REQUIREMENT FOR OBSTRUCTION OF JUSTICE MURDERS

### 1. The *Fowler* Standard

To prove obstruction of justice murder under 18 U.S.C. § 1512, the Supreme Court held in *Fowler*, "the [g]overnment must show" a "'reasonable likelihood' that," absent the killing, "a relevant communication would have been made to a federal officer." 563 U.S. at 670.

In so holding, the Court explicitly rejected a "*possible* or *potential*" formulation, fearing that "the word 'possible' would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature." *Id.* at 671, 676-77.

While the government "need not show" that a relevant communication "would have been federal beyond a reasonable doubt, nor even that it is more likely than not," the "likelihood of communication to

25

a federal officer" must be "more than remote, outlandish, or simply hypothetical." *Id.* at 678.

## 2. *Fowler* Abrogated This Court's Standard

There is no question that *Fowler* altered Second Circuit law regarding obstruction of justice murders. In 2015, while Dhinsa's habeas petition was pending, a panel of this Court recognized that it had "not had previous occasion to apply" *Fowler*'s "reasonable likelihood" standard, strongly suggesting that it "increased the likelihood" of a federal communication that "must be demonstrated." *Veliz*, 800 F.3d at 74-75.

Before *Fowler*, this Court employed a "plausibl[e]" or "possible" communication standard with respect to § 1512's federal nexus requirement. *Id.*; *see U.S. v. Lopez*, 372 F.3d 86, 92 (CA2 2004) (government must present "evidence" of "possible cooperation with federal authorities … from which a rational juror could infer that the victim *plausibly* might have turned to federal officials"); *U.S. v. Romero*, 54 F.3d 56, 62 (CA2 1995) (§ 1512 implicates "the killing of an individual with the intent to frustrate the individual's *possible* cooperation with

26

federal authorities") (emphasis supplied). That is the very standard *Fowler* unequivocally rejected. *See* 563 U.S. at 671, 676.

The district court's contrary insistence – that "*Fowler* did not change the law of the Second Circuit, *except possibly to make it less defendant-friendly*" – misconstrues this Court's precedent. A168 (emphasis supplied). Most notably, the court opined that Dhinsa could have "previously presented" his *Fowler* claim under *U.S. v. Diaz*, 176 F.3d 52 (CA2 1999). A168. *Diaz*, the court said, "arguably demanded more" than *Fowler*" by requiring prosecutors to *definitively* establish that a relevant federal communication "would have" occurred – not just a "reasonable likelihood" of one. *Id.* (quoting 176 F.3d at 91).

But prior panel decisions are binding unless and "until" overruled, by either this Court "en banc" or the "Supreme Court." *U.S. v. Wilkerson*, 361 F.3d 717, 732 (CA2 2004). And the district court's expansive reading of *Diaz* is irreconcilable with *Romero*, the controlling Second Circuit precedent at the time of Dhinsa's conviction. *Compare* A168 *with* 54 F.3d at 62 (merely "*possible*" federal communication suffices) (emphasis supplied).

27

Simply put, the *Diaz* panel was not at liberty to hold that § 1512 requires proof to a certainty. Contrary to the district court's supposition, it couldn't and wouldn't have overruled *Romero sub silentio*, as this Court's subsequent use of "possible" in *Lopez*, 372 F.3d at 92 – decided five years after *Diaz* – readily confirms. In short, the *Romero* standard reigned until *Fowler* displaced it.

## C. *FOWLER* ABSOLVES DHINSA OF FEDERAL OBSTRUCTION OF JUSTICE MURDER

Dhinsa is actually innocent of the obstruction of justice murders of Manmohan and Satinderjit because the evidence presented at his trial flunks *Fowler*'s beefed up federal nexus test. Though hardly insurmountable, *Fowler*'s "evidentiary standard" is "not toothless." *U.S. v. Snyder*, Dkt. No. 16-3779, Slip op. at 9 (CA7 2017).

The district court found *Fowler* satisfied because the record shows that:

- Dhinsa instructed turncoat coconspirator Marvin Dodson to kill Manmohan because he was cooperating with police in a murder investigation involving Dhinsa's brother.

- Dhinsa was involved in federal offenses other than the murders of Manmohan and Satinderjit, including kidnapping, fraud and racketeering.

28

- Satinderjit was already communicating with local officers – who ultimately shared their investigative materials with the Feds – when killed.

- Dhinsa was eventually tried for numerous federal crimes besides the murders of Manmohan and Satinderjit, prospective witnesses.

*See* A171. In addition, "a federal investigation [into Dhinsa's criminal activities] began as early as … sixteen days after the murder of Satinderjit," the second victim. A172.

But this evidence is largely irrelevant to the actual innocence inquiry governing Dhinsa's motion. At most, it merely suggests that Dhinsa "believed" conduct constituting a federal offense "would have been discussed." *Veliz*, 800 F.3d at 74-75. And that alone doesn't satisfy *Fowler* without "*additional appropriate evidence*" that the relevant communication was reasonably likely to have been made to a federal officer. *Id.* (emphasis supplied).

Item one on the district court's list therefore falls away. It doesn't follow from Dhinsa's "broad in-definite" intent to prevent law enforcement communications generally that he intended to prevent *federal* communications in particular – or that a federal communication

29

by the deceased was reasonably likely. *See Fowler*, 563 U.S. at 670; *Lopez*, 372 F.3d at 91-92.

Item two on the list fares no better. While Dhinsa may have committed crimes constituting federal offenses, nothing indicates he had reason to believe Manmohan or Satinderjit would communicate with law enforcement about *those* offenses. *See Veliz*, 800 F.3d at 74-75.

As for item three, a decedent's "willing[ness] to cooperate with … local police" has *never* sufficed – before or after *Fowler*. *See Lopez*, 372 F.3d at 91 ("nexus [not] established by proof that a federal crime was committed and that [deceased] was willing to cooperate with local police").

Nor is it enough to broadly proclaim that local police "*ultimately* shared the entirety of their investigatory materials with federal officers"[21] – without reference to the files' contents or the *timing of the exchange* relative to Manmohan and Satinderjit's deaths. *Cf. Veliz*, 800 F.3d at 74-75 ("proof that there was a federal investigation in progress *at the time*" of the murder may help show a reasonably likely federal communication) (emphasis supplied); *U.S. v. Ramos-Cruz*, 667 F.3d 487,

---

[21]A171.

498-99 (CA4 2012) ("reasonable likelihood" standard met when "federal law enforcement authorities become involved in an investigation approximately a month after the relevant murder, federal authorities are specifically focusing on the group in question, and local authorities investigating the underlying crime are actively cooperating with federal law enforcement officers"). Unlike *Ramos-Cruz*, the district court offered only that the federal investigation here – launched at least four months after Manmohan's death – involved the "ultimat[e]" cooperation of local law enforcement. A171-A172. Left unsaid is when the Feds began to target offenses as to which Manmohan or Satinderjit could have cooperated.

Turning to item four, *Fowler* "cautions" against "afford[ing] undue weight to the mere fact that the defendant was [ultimately prosecuted for] a federal crime." *Veliz*, 800 F.3d at 75. After all, "where a federal crime is at issue, communication with federal law enforcement officers is almost always a *possibility*" – but that doesn't make it *reasonably likely*. *Fowler*, 563 U.S. at 676. "[T]he commission of a federal crime, without more, generally does not satisfy the reasonable likelihood standard." *Snyder*, Slip op. at 10.

31

Nor is the district court's ruling – that a federal communication was reasonably likely with respect to *each* decedent – saved by the fact that Dhinsa was "involved in numerous kidnappings," including one of Manmohan's brother, Kulwant. A172-A173.

By remarkable sleight of hand, the district court conjured a "[s]ignificant" and "substantial indication" that the FBI would have taken up Dhinsa's case out of nothing more than an agency webpage "repeatedly" highlighting its willingness to "work[] with state and local law enforcement on kidnapping matters" and "initiate a kidnapping investigation involving sensitive victims such as children…." *Id.* Therefore, the theory goes, the FBI presumably would have wanted to discuss Kulwant's disappearance with Manmohan and Satinderjit. *Id.* (internal citations and quotations omitted).

Of course, there was never any inkling that Dhinsa kidnapped a child. No matter. According to the district court's *ipse dixit* – if not the evidence of record – the FBI will "monitor kidnapping situations" even without proof of "interstate travel, and offer its assistance from various entities including the FBI Laboratory." A173 (internal citations and quotations omitted).

But that is exactly the sort of "remote, outlandish, [and] simply hypothetical" scenario *Fowler* condemned. *See* 563 U.S. at 678. Kulwant disappeared some 20 and 23 months, respectively, before Manmohan and Satinderjit were killed. *See Dhinsa*, 243 F.3d at 644. There is *no* record evidence that the FBI provided any assistance to state or local police in investigating his disappearance at any point during that roughly two-year interval. And the court's opinion offers no reason to believe the Bureau would have suddenly gotten interested in a two-year old kidnapping case had Manmohan and Satinderjit lived.

Much less did the court explain how FBI Lab assistance to local law enforcement could elicit a "communication" *from* Manmohan or Satinderjit *to* federal law enforcement. *Fowler*, 563 U.S. at 670. It is not enough that federal authorities simply become *involved* in an investigation. *Fowler*'s federal nexus standard concerns communications, and "[t]echnical support is not communication with a witness." *Snyder*, Slip op. at 13. The Seventh Circuit recently elaborated the point:

> Federal officers can assist state prosecution in many ways, such as by providing information from the FBI's DNA database, fingerprint analysis, cellphone forensics, etc. But evidence of such technical assistance does not show a reasonable

> likelihood that the eyewitness in question *would
> have communicated with a federal officer*.

*Id.* (emphasis supplied); *see also id.* at 15 ("[A]lthough federal officers
may have assisted with a state prosecution, there is insufficient evidence
to find a reasonable likelihood that any federal officer would have
assisted in a capacity where he would have communicated with
eyewitnesses.").

Finally, it is telling that the district court mustered no statistics to
show that the general FBI practice of assisting local kidnapping
investigations made it reasonably likely the FBI would assist state and
local police in *investigating Kulwant's disappearance*. One can only infer
that the relevant statistics do not support the court's position. *Cf. Fowler*,
563 U.S. at 677 (federal involvement *not* reasonably likely if only 0.7% of
national marijuana arrests are made by federal officers); *Snyder*, slip op.
at 12 (no reason to believe it likely that Hobbs Act robbery would have
been investigated federally just because six Hobbs Act robberies out of
"hundreds" were prosecuted in federal court during relevant period).

## D.   <u>CONCLUSION</u>

Because the evidence marshaled by the district court fails *Fowler*'s
"reasonable likelihood" test, no rational juror could convict Dhinsa under

the prevailing legal standard. *Bousley*, 523 U.S. at 623. When a defendant convicted of violating 18 U.S.C. § 1512 "has met his burden of establishing actual innocence" – and there is no record support for finding a federal communication reasonably likely – a habeas writ vacating the convictions "must issue" under § 2241. *Tyler*, 732 F.3d at 241.

## **CONCLUSION**

This Court should vacate the judgment below and reverse Dhinsa's

obstruction of justice murder convictions.

Dated:      New York, NY
            Aug. 28, 2017


                                    Respectfully submitted,


                            By:   _____/s/_____

                                  MARC FERNICH, ESQ.
                                  LAW OFFICE OF MARC FERNICH
                                  810 Seventh Avenue
                                  Suite 620
                                  New York, New York 10019
                                  (212) 446-2346
                                  maf@fernichlaw.com

                                  *Attorneys for*
                                  *Gurmeet Singh Dhinsa*


On the Brief:

     Marc Fernich
     Giuliana Graham

36

## **CERTIFICATE OF COMPLIANCE**

**MARC FERNICH**, an attorney admitted to practice in this Court, certifies per Fed. R. App. P. 32(a)(7) that, according to the word count feature on Microsoft Word 2016, this brief contains 6,971 words of proportionately-spaced Century 14- and 12-point typeface.

Dated:     New York, NY
            Aug. 28, 2017

                                     /s/
                              **MARC FERNICH**

<u>**CERTIFICATION OF PDF DOCUMENT**</u>

**Re: *Dhinsa v. Krueger*, 17-0874**

The foregoing BRIEF FOR PETITIONER-APPELLANT GURMEET SINGH DINSA has been submitted in PDF format on August 28, 2017. The document was scanned for viruses before filing. No viruses have been detected.

/s/
_____
**GIULIANA GRAHAM**